IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ENRICO E. BROWN, | |
|    Plaintiff, | |
| v. | Civil Action No.:  PWG-20-1112 |
| WARDEN, | |
|    Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Enrico E. Brown filed correspondence, which was docketed as a civil complaint, wherein he complained that he was not being provided treatment for an infected tooth and he needed a root canal.  ECF No. 1.  Defendant filed a response to this Court's Order to Show Cause outlining the care Brown received to treat his dental concerns and attaching copies of Brown's medical records.  ECF No. 5.  Brown responded, disputing that he received the care indicated in Defendant's response and further asserting he needed additional dental care.  ECF No. 11.  Thereafter the parties were directed to file status reports detailing the dental and/or medical care Brown received for the infected tooth since the previous filing.  ECF No. 12.  The parties filed status reports (ECF Nos. 15[1] and 17) further detailing the dental care Brown received.  The issue

---

[1] In Brown's status report (ECF No. 15) and "Motion Declaration in Support of Corizon LLC Failure to Carry Out Medical Orders" (ECF No. 29) he seeks to name individual Defendants, including the dentists and other medical providers that provided treatment for his tooth and examined him at various times; adds claims for monetary damages, and details his complaints with the care actually provided. Additionally, he raises claims unrelated to those regarding his dental care *e.g.* that he was improperly removed from his prison job, has suffered harassment, and was improperly placed in isolation, and suffers from colitis, back pain, and muscle/nerve spasms which have not been properly treated. He also alleges that Corizon has not sent him to a specialist to assess his spinal decompression.  None of those claims will proceed here.  This case was opened upon Brown's letter request for injunctive relief, no filing fee or motion to proceed in forma pauperis was filed, and the Office of the Attorney General was directed to respond to the letter based on the exigencies of the allegations.  If Brown seeks to pursue the allegations raised in his status report and motion, he may file a new civil rights complaint and either pay the filing fee or seek leave to proceed in forma pauperis.  He must also set forth his claims and explain how each Defendant named is responsible for the acts alleged.  The Clerk is directed to provide him forms to do so.  The "Motion Declaration" (ECF No. 29) therefore is denied, without prejudice.

regarding Brown's entitlement to injunctive relief is ripe for this Court's consideration; a hearing is not required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Brown's motion for injunctive relief is DENIED.

**I.      Background**

      **A.      Plaintiff's Allegations**

This case was opened upon receipt of Brown's correspondence which was construed as a complaint seeking injunctive relief. ECF No. 1. The "complaint" consists of Brown's letter to the Court and a letter Brown sent to the Chief of Security on April 11, 2020. ECF No. 1-1. He claimed that inmates at MCIJ were not being tested for COVID-19 and the general population was on modified movement. ECF No. 1. He further alleged that he had placed sick calls to have a root canal because of an infected tooth. He alleged that he was provided antibiotics but was not permitted to see a dentist. *Id*. He further stated that he submitted sick calls requesting to see the nurse in person so that his infection could be examined, or that he be provided antibiotics. ECF No. 1-1, p. 1. He also requested to be seen by a dentist and provided x-rays, antibiotics, and pain relief. *Id*.

In his reply to Defendant's response, he states that he first reported the need for dental care on March 26, 2020. ECF No. 11, p. 2. Brown alleges that on an unspecified date Dr. Temesgen phoned in an order for antibiotics to the wrong facility and on April 13, 2020, he reissued it for the proper facility. *Id*. Brown also submitted copies of letters and grievances he filed seeking dental care. ECF No. 11-2 to 11-10.

In his status report, Brown explains that on June 8, 2020, he was examined by Grady Foster, D.D.S. ECF No. 15, p. 4. On July 29, 2020, Hayden Pantino, an oral surgeon, performed dental surgery on Brown. *Id*., p. 5. Brown alleges that on that same date Dr. Pantino performed another

oral surgery on Brown without his consent. *Id*., p. 6. On September 8, 2020, Brown was examined by Dr. German, a maxillofacial surgeon at the University of Maryland Medical Center, regarding damages he allegedly sustained during the oral surgery performed by Dr. Pantino. *Id*., p. 8. Dr. German recommended further surgical care to treat Brown's dental issues. *Id*., p. 9.

### B. Defendants' Response

Brown's sick call requests regarding his tooth pain submitted from April through early June of 2020, were returned to him with a notation that the dental office was closed due to the COVID-19 pandemic. ECF No. 18, pp. 1-6. Nevertheless, on April 9, 2020, Nurse Ebai examined Brown regarding his complaint of tooth pain; she did not note any swelling but prescribed two 400 mg tablets of Motrin due to Brown's subjective complaints of pain and advised him to place a "dental sick call" if the pain continued. ECF No. 6, pp. 2, 4. On April 12, 2020, Brown was prescribed the antibiotic Amoxicillin for his dental complaint; he was seen by a nurse practitioner the following day and prescribed 600 mg of Ibuprofen for pain relief and given a dental referral. *Id*., pp. 7-10.

Brown was seen for his dental concerns on June 8, 2020 by Dr. Foster. ECF No. 18, pp. 7-9, 21. That examination noted that Brown's gums had "mild soft tissue inflammation" and he suffered from "irreversible pulpitis non restorable decay = #32". *Id*., pp. 8, 21. Brown was provided Keflex (an antibiotic) and Motrin and Tylenol. *Id*., p. 21. He was referred for further treatment. *Id*., p. 22. On that same day, Brown signed a form indicating his "chief complaint was addressed to [his] satisfaction." *Id*., p. 7.

On July 27, 2020, Dr. Foster examined Brown and assessed him as suffering from "irreversible pulpitis non restorable decay = #32" and planned for an extraction of the tooth. *Id.*, p. 19. On July 29, 2020, Dr. Patino performed a surgical procedure to extract the retained root of

the tooth causing Brown pain. *Id*., pp. 16-24, 33. On the date of the procedure Brown reviewed and signed a consent and authorization for oral surgery. *Id*., p. 16. He indicated he understood the procedure and had been given the opportunity to ask questions. He also indicated his understanding that the procure had "no guarantee of success or permanence of the treatment." *Id*. Before the procedure Brown explained that an extraction had been attempted about a year before, but it was unsuccessful. *Id*., pp. 17, 23. During the procedure Dr. Patino was unable to "mobilize roots" and Brown was informed of this and the "decision was made to obliterate roots #32 to full extent accessible with impactair handpiece leaving remnants of tooth." *Id*. Brown was again informed of the procedure. *Id*. After the procedure he was prescribed antibiotics and pain medication for 30 days and directed to return in two weeks. *Id*.

On September 8, 2020, Brown received a follow-up consultation with John Quincy Storie, DMD an oral and maxillofacial surgeon at the University of Maryland Oral & Maxillofacial Surgery Clinic ("OMFS"). ECF No. 18, pp. 12-14. The report noted that Brown was assessed as suffering from six months of right sided jaw/dental pain with intermittent swelling that had been treated with antibiotics. *Id*., p. 13. He had undergone an extraction on August 29, 2020,[2] "but the tooth was incompletely removed likely due to its close proximity to the inferior alveolar nerve." *Id*. Brown reported persistent pain since that time and was directed to "follow up with an oral surgeon because of the proximity of the remaining tooth structure to the nerve. [Brown] report[ed] persistent dental pain since the time of the procedure." *Id*., p. 12. Dr. Storie noted that after the extraction "some of the coronal/middle third of the tooth remain[ed]" and Brown would "benefit from removal of more of the coronal/middle aspect of the tooth" however full removal of the tooth was contraindicated as it would create "a very high risk for developing paresthesia, because of the

---

[2] The report refers to the previous attempt to extract the roots as occurring on August 29, 2020, but the records from the facility indicate the surgical intervention occurred on July 29, 2020.

close proximity of the apex of the tooth to the inferior alveolar nerve." *Id.*, p. 13. At the time of exam, Brown did not have an infection but did have a small opening in the gingiva. *Id.* Dr. Storie recommended Brown undergo "surgical coronectomy of middle/coronal aspect of tooth #32 under local anesthesia." *Id.* The procedure could not be performed in the OMFS hospital clinic due to COVID restrictions and it was noted that the OMFS team would follow up with prison staff regarding the recommendation for further treatment location *e.g.,* the operating room or hospital clinic. *Id.* Paul A. German, DDS, reviewed and agreed with Dr. Storie's assessment and plan of care. *Id.*, p. 14.

### C.     Pending Motions

Pending are several non-dispositive motions filed by the parties which are each considered in turn.

Defendant's Motion to Seal Brown's medical records (ECF No. 19) is granted.

Brown's Motions to Amend Complaint to Add Jury Demand (ECF No. 21), Prayer for Amended Relief (ECF No. 23), and for Trial (ECF No. 25) are granted insofar as Brown's intentions are noted, however, it is premature for the case to be set in for trial and his damage claim may not proceed here. As noted above, this case was instituted upon receipt of correspondence seeking injunctive relief. No individual Defendants have been named or served in the instant case. Until Brown has filed a proper Amended Complaint addressing the deficiencies identified above and at p. 1, footnote 1 of this Memorandum Opinion, no further relief beyond the ruling on his motion for injunctive relief regarding his dental care is appropriate.

Brown's Motion for the Court to Appoint an Independent Expert (ECF No. 24) is denied. Pursuant to Local Rule 104.4 (D. Md. 2021), discovery may not commence before Defendants have answered or otherwise responded to the Complaint, and then only after a scheduling order

has been issued by this Court. No scheduling Order has been entered in this case and Brown is not entitled to discovery at this time.

Brown's Motion to Appoint Counsel (ECF No. 31) is also denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[3] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Lastly, Brown has filed a Motion for Extension of Time/Motion Stay (ECF No. 33) indicating that he has been hospitalized and is therefore unable to respond to anything filed in this case. The Motion is denied. Brown filed replies to Defendant's response to the show cause order and nothing else is due to be filed by him in this case, therefore there is no reason to stay the case or grant an extension of time.

## II.     Standard of Review

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), *see also SAS Institute, Inc. v. World Programming Ltd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong

---

[3] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

An additional consideration is required when injunctive relief is sought in the context of prisoner civil rights case. Under 18 U.S.C. § 3626(a)(2):

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

*Id*. Application of this standard to the instant case requires this Court to deny Brown's request for injunctive relief as explained below.

**III.    Discussion**

7

First, there is no likelihood that Brown would succeed on the merits as to the issues he raised in this case regarding denial of dental care. To state a claim for denial of medical care a prisoner must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The record demonstrates that there has not been deliberate indifference to Brown's serious medical need. While Brown disagrees with the time it took for him to be seen by a dentist during the beginning of the COVID-19 pandemic, he received both antibiotics and pain relief to treat his infection. Shortly thereafter he was seen by a dentist and underwent oral surgery in an effort to resolve the issue. The dentist at the facility could not fully complete the surgery and referred Brown to an oral-maxillofacial surgeon who performed additional surgery and noted that the relief Brown sought, full extraction of the tooth/root, was contraindicated due to its proximity to Brown's nerve. There is no dispute that Brown has received dental care. While Brown disagrees that the problem has been fully addressed, the need for an injunction requiring dental care no longer exists. The actual and imminent harm that existed at the time Brown filed his complaint has been addressed by the provision of antibiotics, pain medication, diagnostic testing, examination by dentists and maxilla-facial surgeons, and two oral surgeries. Because numerous steps have been taken to treat Brown's dental issue, which is the relief he sought, there is no evidence that Defendant knowingly and unreasonably disregarded an objectively intolerable risk to his health and safety.

Additionally, the balance of equities does not favor Brown. The fact that Brown received regular medical treatment, including prescriptions, evaluations, and surgeries for his dental complaints, renders his request for relief moot. *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) (transfer mooted inmate's request for declaratory and injunctive relief); *Magee v.*

*Waters*, 810 F.2d 451, 452 (4th Cir. 1987).  Further, it is well-settled that mere disagreement with medical care does not amount to a federal constitutional violation.  Brown's disagreement with a prescribed course of treatment does not establish deliberate indifference and therefore does not state a claim.  *Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982) *aff'd,* 729 F.2d 1453 (4th Cir. 1984).

  The request for injunctive relief shall be denied and the case dismissed

  A separate Order follows.


__7/26/21_____            _____/s/_____
Date                        Paul W. Grimm
                          United States District Judge